IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 CR 1030 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| RAHSHONE BURNETT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On March 17, 2010, defendant Rahshone Burnett and others were charged in a superceding indictment with violations of 21 U.S.C. § 846, § 843(b), § 841(a)(1), and 18 U.S.C. § 924(c)(1)(A). Defendant was charged in Count One with conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846; in Count Four with the use of a communication facility in the commission of a felony, in violation of 21 U.S.C. § 843(b); and in Counts Five and Count Ten with distribution of a controlled substance in violation of 21 U.S.C. 841(a)(1).[1] After a trial that began on January 28, 2013, the jury acquitted defendant on Counts One and Four, and found him guilty on Counts Five and Ten.

Count Five of the superceding indictment charged that on September 5, 2009, defendant and co-defendant Tyotis Fields possessed with intent to distribute heroin, a controlled substance. At trial, the government presented evidence that Fields was arrested on September 5, 2009, by Chicago Police Officers, and that a search of his vehicle produced approximately 11.4 grams of

---

[1] Defendant was also charged in Counts Two and Three of the superceding indictment with the use of a communication facility in the commission of a felony, in violation of 21 U.S.C.§ 843(b), and in Count Six with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). On January 17, 2013, prior to trial, the government moved to dismiss Count Six. On February 5, 2013, prior to jury instruction, the government moved to dismiss Counts Two and Three, which the court granted.

heroin. Fields testified that defendant had supplied the heroin. Fields further testified that after he was arrested, he called defendant to arrange a deal to have defendant trade firearms to the police in exchange for Fields' freedom, and that this exchange was completed.

Count Ten of the superceding indictment charged that on September 29, 2009, defendant and co-defendant Cordell Davis possessed with intent to distribute heroin. At trial, the government presented evidence that on September 29, 2009, Davis sold a bundle of heroin, containing approximately 12.1 grams, to an undercover police officer. The government introduced recorded conversations to link defendant as the supplier of the heroin.

In the government's version of the offense submitted to the probation office and in the government's sentencing memorandum, the government seeks to have the conduct alleged in Counts One and Four considered as relevant conduct at sentencing.[2] In Count One, defendant was charged with conspiring with his alleged supplier Richard Harrington[3] and others to obtain and distribute wholesale quantities of heroin from at least November 2008 until his arrest in October 2009. The government alleged that for a few months in 2009, defendant ran a drug spot on the corner of Central Park and Huron Streets on the west side of Chicago. At trial, defendant's defense to the conspiracy count was that his relationship with Harrington was that of a buyer-seller.

---

[2] In their sentencing memoranda, the parties disagree on the application of numerous guideline provisions, as well as the relevant 18 U.S.C. 3553(a) factors. The government's guideline calculations yield an advisory guideline range of 324-405 months imprisonment. Defendant disagrees with the presentence report and asks for a sentence of 36 months. This opinion focuses solely on the parties' disagreement regarding the consideration of acquitted conduct as relevant conduct in determining the relevant drug quantity under Section 2D1.1 of the guidelines.

[3] Harrington was charged in a separate indictment, 09-CR-0814, before Judge St. Eve.

The government argues that, in order for the jury to have found defendant guilty on Counts Five and Ten, the jury must have necessarily believed that defendant exercised dominion and control over the heroin that his co-defendants possessed and/or sold on those two dates in September. This finding, the government argues, would have been sufficient to support a guilty verdict on the conspiracy count. The government therefore seeks to demonstrate that defendant's involvement in the conspiracy may be found by a preponderance of the evidence at sentencing, and that the drug quantity attributed to the conspiracy should be factored into defendant's offense level. The government also argues that, regardless of whether the verdict is consistent, under the Supreme Court's decision in United States v. Watts, 519 U.S. 148, 154 (1997), and the Seventh Circuit's subsequent decision in United States v. Waltower, 643 F.3d 572 (7th Cir. 2011) cert. denied, 132 S. Ct. 562, 181 L. Ed. 2d 405 (U.S. 2011), a district court is authorized to consider acquitted conduct at sentencing. Relying on the acquitted conduct, the government alleges that defendant is responsible for distributing over a kilogram of heroin in the course of the conspiracy.

Defendant objects to the consideration of this acquitted conduct to increase the drug quantity. He argues that the jury might have found him guilty of aiding and abetting his co-defendants on each of the dates in September 2009, and might have squarely rejected the alleged conspiracy. The verdict would therefore not be inconsistent, as the government alleges. Defendant also argues that relying on the acquitted conduct would be unconstitutional and contrary to the goal of promoting respect for the law set forth in 18 U.S.C. § 3553(a).

The impact of the proposed relevant conduct is significant. Under § 2D1.1 of the Guidelines, if the quantity of heroin for which defendant is deemed responsible is roughly 24

3

grams, his base offense level would be 18. If the court considers the acquitted conduct as relevant conduct and accepts the government's calculations, defendant could be held responsible for at least 1 kilogram of heroin, and his base offense level would be 32. The drug quantity defendant is deemed responsible for will therefore have significant consequences for defendant's final advisory guideline range.

## DISCUSSION

The government argues that it is appropriate for the court to consider the acquitted conduct because a jury's guilty verdict requires proof beyond a reasonable doubt, while facts at sentencing need be proved only by a preponderance of the evidence. United States v. Watts, 519 U.S. 148, 154 (1997). In Watts, the Supreme Court noted that 18 U.S.C. § 3661 states that: "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 519 U.S. at 151. Further, the Watts decision cites the comments to Section 1B1.3, which state: "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." USSG § 1B1.3, comment., backg'd. Watts explicitly rejected the argument that a sentence informed by acquitted conduct violates the Fifth Amendment's prohibition on double jeopardy and its due process guarantee, and instead approved of the consideration of acquitted conduct in fashioning a sentence.

Defendant argues that the court should not rely on the acquitted conduct because doing so would violate the Sixth Amendment right to a jury trial, run contrary to the goal of promoting respect for the law described in 18 U.S.C. § 3553(a), and result in unwarranted sentencing

4

disparities. Defendant further argues that Watts does not foreclose his argument because the decision is strictly limited to the discrete double jeopardy issue raised in that case and does not address his Sixth Amendment challenge. See United States v. Booker, 543 U.S. 220, 240, 125 S. Ct. 738, 754, 160 L. Ed. 2d 621 (2005) (stating that Watts "presented a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause, and did not even have the benefit of full briefing or oral argument."); see also Watts, 519 U.S. at 170, 117 S. Ct. 633 (KENNEDY, J., dissenting.) ("to increase a sentence based on conduct underlying a charge for which the defendant was acquitted does raise concerns about undercutting the verdict of acquittal"). Since Watts, defendant argues, the Supreme Court has "proceeded in a long line of cases to vigilantly protect the jury's role," beginning with Apprendi v. New Jersey, 530 U.S. 466, 478, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and including the Court's recent decision in Alleyne v. United States, 133 S. Ct. 2151, 2164 (2013).

Defendant is correct that the holding in Watts is limited to the Fifth Amendment issue raised in that case. Booker, 543 U.S. at 240. As the government points out, however, the Seventh Circuit has cited Watts with approval since the Apprendi line of cases and has expressly rejected the argument that Booker calls Watts into question. See United States v. Waltower, 643 F.3d 572, 576 (7th Cir. 2011) cert. denied, 132 S. Ct. 562, 181 L. Ed. 2d 405 (U.S. 2011). In Waltower, the court examined the Apprendi line of cases and explicitly concluded that "so long as a sentence does not exceed the statutory maximum, there is no Sixth Amendment concern with the advisory guidelines scheme. . . . Because the Supreme Court has rejected due process and double jeopardy challenges to the use of acquitted conduct at sentencing, its use on an advisory basis cannot by itself furnish Sixth Amendment ammunition for excluding acquitted

5

conduct at sentencing." 643 F.3d at 577. The court did, however, note that if Watts is no longer good law, the Supreme Court is the appropriate court to acknowledge it. Waltower, 643 F.3d at 577 ("We are the right court only to allow Waltower to preserve his argument."). Similarly, this court is not empowered to credit defendant's Sixth Amendment challenge and hold that consideration of acquitted conduct is unconstitutional. Although there is no Supreme Court authority authorizing the use of acquitted conduct post-Booker,[4] there is likewise no repudiation of Watts. This court is therefore governed by the Seventh Circuit's holding in Waltower.

Defendant's arguments against the consideration of acquitted conduct, however, are not entirely foreclosed by Watts and Waltower. The language of the Watts decision is discretionary: "we are convinced that a sentencing court *may* consider conduct of which a defendant has been acquitted." Watts, 519 U.S. at 154 (emphasis added). Likewise, the statutory text and guidelines commentary that the Supreme Court relied on in deciding Watts are both discretionary. See 18

---

[4] In Alleyne, the Court cautioned that "[o]ur ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." 133 S. Ct. at 2163. The Court has not explicitly considered whether the Apprendi line of cases has influenced the propriety of using acquitted conduct as opposed to uncharged conduct or other sentencing factors. Justice Scalia's concurring opinion in Rita v. United States, however, highlights how appellate reasonableness review has opened the door for Sixth Amendment challenges to sentences based on acquitted conduct within the statutory range authorized by the jury's verdict. 551 U.S. 338, 368, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Sentences that may be reasonable in light of judge-found enhancements may not be similarly reasonable when the court considers only the facts explicitly found by the jury. Therefore, "for every given crime there is some maximum sentence that will be upheld as reasonable based only on the facts found by the jury or admitted by the defendant," from which it follows that "[e]very sentence higher than that is legally authorized only by some judge-found fact." Rita, 551 U.S. at 372. "[E]xcessive sentences within the statutory range, and the ability of appellate courts to reverse such sentences, inexorably produces, in violation of the Sixth Amendment, sentences whose legality is premised on a judge's finding some fact (or combination of facts) by a preponderance of the evidence." Id. at 380.

U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence"); USSG § 1B1.3, comment., backg'd. ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range"). The sentencing court therefore has the discretion to decline to consider acquitted conduct as relevant conduct in determining the appropriate sentence. See United States v. Pimental, 367 F. Supp. 2d 143, 145 (D. Mass. 2005); but see United States v. Ibanga, 271 F. App'x 298, 301 (4th Cir. 2008) (vacating defendant's sentence for procedural error when the district court declined to consider acquitted conduct).

Additionally, the Supreme Court has repeatedly articulated the individualized nature of sentencing. See, e.g., Pepper v. United States, 131 S.Ct. 1229 (2011). Where the consideration of acquitted conduct yields a guideline range that the sentencing court determines is too high to provide a sentence sufficient, but not greater than necessary to accomplish the purposes of punishment for a particular defendant, the court may determine that a variation below the guidelines is appropriate. See United States v. White, 551 F.3d 381, 386 (6th Cir. 2008) ("a district court judge may disagree with the application of the Guidelines to a particular defendant because the Guidelines range is too high or too low to accomplish the purposes set forth in § 3553(a). If the district court judge concludes that the sentence produced in part by these 'relevant conduct' enhancements 'fails properly to reflect § 3553(a) considerations,' the judge may impose a lower sentence, including, if reasonable, a lower sentence that effectively negates the acquitted-conduct enhancement.") (citing Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456,

2465, 168 L.Ed.2d 203 (2007), and <u>Kimbrough v. United States</u>, 552 U.S. 85, 128 S.Ct. 558, 564, 169 L.Ed.2d 481 (2007)). It is precisely this discretion that the Seventh Circuit cited in <u>Waltower</u> to conclude that no Sixth Amendment violation occurs when a sentencing court relies on acquitted conduct in an advisory guidelines system. See <u>Waltower</u>, 643 F.3d at 577. In the instant case, therefore, although the court acknowledges that it has the discretion to consider the acquitted conduct in sentencing defendant, it also has the discretion to refuse to consider that conduct.[5]

The right to a trial by jury is one of the foundational principles in the American criminal justice system. In <u>Apprendi</u>, the Supreme Court emphasized the common law roots of the jury system and essential role the jury plays: "'[T]o guard against a spirit of oppression and tyranny on the part of rulers,' and 'as the great bulwark of [our] civil and political liberties,' trial by jury has been understood to require that 'the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours . . . .'" 530 U.S. at 477, 120 S.Ct. 2348 (citations omitted). The substance of the right to a jury trial is a meaningful guarantee "that the jury would still stand between the individual and the power of the government." <u>Booker</u>, 543 U.S. at 237.

---

[5]Even if the court did not exercise its discretion in declining to consider acquitted conduct, the outcome of the guidelines calculation would not change. The court does not find that the government has established a drug quantity of greater than one kilogram by the preponderance of the evidence. As explained more fully below, the jury did not fully credit co-defendant Fields' testimony regarding defendant's involvement in drug trafficking activities, and the court likewise does not credit that testimony. The government's assertion that defendant trafficked in over one kilogram of heroin extrapolates from Fields' testimony, and the court rejects that calculation as unsupported by a preponderance of the evidence.

8

The Supreme Court has also consistently recognized the essential role of the jury as fact finder. See, e.g., Blakely v. Washington, 542 U.S. 296, 306-07, 124 S. Ct. 2531, 2539, 159 L. Ed. 2d 403 (2004) ("The jury could not function as circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State *actually* seeks to punish."). The instructions given to jurors for their deliberations list the essential elements of each offense that must be proved beyond a reasonable doubt to render a guilty verdict. "When a finding of fact alters the legally prescribed punishment so as to aggravate it," either by raising the mandatory minimum or the statutory maximum, that fact must be submitted to the jury. Alleyne v. United States, 133 S. Ct. 2151, 2162 (2013). A sentence based on essential elements not submitted to a jury is unconstitutional. Although the Supreme Court has emphasized the broad discretion of the sentencing court in determining an appropriate sentence, the Court has likewise fiercely guarded the role of the jury to determine the boundaries of the authorized sentence.[6]

When a sentencing court considers acquitted conduct as relevant conduct, it shifts the delicate balance between these participants in the criminal justice system. First, overriding the determination of the jury essentially nullifies its voice and relegates the jury to the "circuitbreaker" function Blakely warns against. In cases where the defendant is acquitted of

---

[6] See Blakely, 542 U.S. at 305-06, 124 S.Ct. 2531 ("Our commitment to Apprendi in this context reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of jury trial. That right is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary.").

9

some counts and that conduct is nonetheless considered, the message sent by the sentencing court is that the jury erred, or that even if it did not err, the reasonable doubt standard is essentially a formality that the prosecution and the judge may circumvent once the jury is dismissed. Throughout the course of a trial, jurors are repeatedly instructed that they are fulfilling an essential role, that they alone are the "judges of the facts," and that the high standard they must hold the government to is that of proof beyond a reasonable doubt. These maxims ring hollow when a jury renders its verdict, the court thanks them for their service, and then disregards their findings or determines that the acquittal was inconsequential. The consideration of conduct that a jury rejected does more than disavow the jury's verdict– it trivializes the jury's function and undermines the Sixth Amendment.

    Second, consideration of acquitted conduct increases the government's power to dictate sentences in two concrete ways. In a system where the overwhelming majority of criminal cases end in a guilty plea, few defendants make the choice to undergo a trial and put the government to its burden. Those defendants who go to trial also forego the benefit of an offense level adjustment for acceptance of responsibility under Section 3E1.1 of the Guidelines. The defendants who do test the government's case and succeed being acquitted on some counts are then subjected to the additional risk that the court will nonetheless find them guilty of criminal acts the jury did not. The prosecution can therefore obtain the same sentence when there is a partial acquittal as when there is a conviction on all counts. Where the incentive for testing the government's case is nullified in this manner, fewer defendants will choose to risk going to trial and forego the opportunity for an offense level reduction. For all the emphasis on the

importance of judicial discretion, the use of acquitted conduct at sentencing also reflects the substantial amount of prosecutorial discretion.

This practice also favors the prosecution by awarding the government a second chance at obtaining punishment for the acquitted counts. At trial the government is given the opportunity to prove its case beyond a reasonable doubt to the jury, but if it fails to meet this burden on some counts, the word of the jury is not final. At sentencing, free of the constraints of the Federal Rules of Evidence, the rigorous reasonable doubt standard, and other constitutional protections, the government may retry those counts to the bench under the catch-all that is relevant conduct. This time, the hurdle the government needs to clear is simply a preponderance of the evidence, and that hurdle is not high. The alleged facts presented to the judge are the same facts that were presented to the jury. The defendant may thus win an acquittal on all but on a single count of a multi-count indictment, and yet be sentenced as if he had been convicted on all counts. That acquittal, so rare and likely hard-won, is rendered virtually meaningless. To ensure that a defendant is not punished for conduct the jury does not believe should factor into sentencing, a jury would have to vote for acquittal on all counts.

The consequences to upsetting this equilibrium can be significant to the public as well. The use of acquitted conduct undermines respect for the law, contrary to 18 U.S.C. § 3553(a)(2)(A). Criminal jury trials afford lay people the opportunity to participate in the criminal justice system. When a sentencing court considers acquitted conduct, jurors may lose confidence in that system and grow frustrated with the burden placed upon them to listen to a case and deliberate, only to have their verdict ignored by the sentencing court. See White, 551 F.3d at 397 (describing the frustrations of a juror expressed in a letter to the sentencing judge

11

when the judge considered sentencing the defendant based on acquitted conduct). That "great bulwark of [our] civil and political liberties" is eroded when the public loses confidence in the role of the jury to protect the public against prosecutorial and judicial power.

Sixth Amendment challenges to the consideration of acquitted conduct have considered all of the above in arguing that facts that have been rejected by the jury may not be used by the judge to increase a defendant's sentence. See Waltower; United States v. White, 551 F.3d 381, 385 (6th Cir. 2008). These challenges have failed in the courts of appeals because, post-Booker, the sentencing court retains the discretion to consider any relevant facts, including acquitted conduct, in arriving at an appropriate sentence within the statutorily defined sentencing range. Because the consideration of acquitted conduct does not mandate a particular sentence, but merely has the capacity to influence the choice of the sentence within the authorized range, judicial factfinding does not invade the province of the jury. It is the discretionary nature of the guideline system that prevents a Sixth Amendment violation.[7]

It therefore follows that there are instances where that discretion should be exercised, either against the consideration of acquitted conduct altogether, or in favor of mitigation when

---

[7] See United States v. White, 551 F.3d 381, 384 (6th Cir. 2008) (acknowledging that, under a mandatory guidelines system, it would be a violation of the Sixth Amendment for the district courts to increase sentences based on acquitted conduct).

determining the appropriate sentence within the statutorily defined range.[8] In the instant case, this court chooses to exercise that discretion.

When the acquitted conduct drives the advisory guideline range in such a manner that it multiplies the recommended range by a significant factor, the court must carefully determine whether the alleged conduct has been proved by the government, whether the goals of 18 U.S.C. § 3553(a) are served by the imposition of an enhanced sentence, and whether such a sentence promotes respect for the law, not just on the part of the defendant, but by the public as a whole. There are compelling reasons in this particular case to decline to allow the acquitted conduct to drive defendant's sentence as high as the government seeks. If the drug amount attributable to the two counts of conviction were the drug quantity used in the application of the guidelines, defendant's base offense level would be 18. The enhancements for leader/organizer of a criminal enterprise, the use of a firearm in the commission of a drug trafficking crime, and

---

[8] This court is not the only court to find call for more rigorous consideration when taking acquitted conduct into account at sentencing. See United States v. Mercado, 474 F.3d 654, 658 (9th Cir. 2007) (Fletcher, B., J., dissenting) ("Reliance on acquitted conduct in sentencing diminishes the jury's role and dramatically undermines the protections enshrined in the Sixth Amendment."); United States v. Faust, 456 F.3d 1342, 1349 (11th Cir. 2006) (Barkett, J., specially concurring) ("I strongly believe ... that sentence enhancements based on acquitted conduct are unconstitutional under the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment."); United States v. Ibanga, 454 F.Supp.2d 532, 536 (E.D.Va. 2006) (Kelley, J.) ("Sentencing a defendant to time in prison for a crime that the jury found he did not commit is a Kafka-esque result.") (footnote omitted), vacated by, 271 Fed.Appx. 298 (4th Cir. 2008); United States v. Pimental, 367 F.Supp.2d 143, 153 (D.Mass. 2005) (Gertner, J.) ("To tout the importance of the jury in deciding facts, even traditional sentencing facts, and then to ignore the fruits of its efforts makes no sense - as a matter of law or logic."). Even former Sentencing Commissioners have called for reform of the relevant conduct guidelines to exclude acquitted conduct. See An Interview With Former USSC Vice Chair John R. Steer, The Champion (September 2008).

obstruction of justice would bring the final offense level to 24.⁹  Combined with defendant's Criminal History Category of II, the advisory sentencing range that results would be 57-71 months.  Under the government's submission, defendant's base offense level would be 32, and the enhancements mentioned above would bring the final offense level to 38.  The resulting advisory guideline range would be 262-327 months, an extremely substantial enhancement. Even if the court sentenced the defendant to a low-guidelines sentence of 262 months, more than 15 years of the defendant's almost 22-year sentence¹⁰ could be attributed to the consideration of acquitted conduct.

The Seventh Circuit has recognized that, at sentencing, "[a] higher standard [than the preponderance of the evidence] might be called for only in the rare instance where a factual finding will result in a sentencing increase so great that the sentencing hearing can fairly be characterized as a tail which wags the dog of the substantive offense. " United States v. Corbin, 998 F.2d 1377, 1387 (7th Cir. 1993) (internal citations omitted). Here, the drug quantity is a sentencing factor, not an element of the offense that must be proved beyond a reasonable doubt to the jury, because the Seventh Circuit has consistently held that the quantity of drugs is not an element of the offense to be submitted to the jury, United States v. Schuster, 948 F.2d 313, 315 (7th Cir. 1991) (collecting cases), except when the drug quantity would raise the mandatory minimum, Alleyne, 133 S. Ct. 2151. Yet, the drug quantity is the factor fueling the sentence in this case, rather than any fact found by the jury.  Certainly, this is an instance of the factor as a

---

⁹See USSG §§ 2D1.1(d)(1), 3B1.1(c), and 3C1.1.  The court agrees with the government that these guidelines enhancements apply in the instant case.

¹⁰ The court notes that defendant has recently been sentenced to 90 months incarceration in an unrelated case, to which the sentence in the instant case will run consecutively.

14

tail that wags the dog of the substantive offense, and the court should closely scrutinize whether the evidence presented satisfies the government's burden despite the jury's rejection of that same evidence.

Further, in support of their drug amount calculation, the government relies principally on the testimony of co-defendant Fields. At trial, Fields testified regarding how often he packaged drugs for Burnett, how often he worked for Burnett at the alleged drug spot, and about the events of September 5, 2009. Fields' testimony was critical to the government's case for both Counts One (conspiracy) and Five (possession). The jury evaluated Fields' testimony and found him credible on some points, but it is clear that they did not fully accept his testimony as true. Had the jury believed Fields' testimony regarding defendant's distribution conspiracy, defendant would have been convicted on Count One. Because Fields was the primary witness regarding defendant's involvement in the September 5, 2009, drug seizure,[11] the jury must have believed Fields' testimony regarding his source for the heroin seized on that day. To affirm the jury's credibility finding and verdict on Count Five, but to disregard those same findings on Count One would disrespect the jury's credibility determination and verdict.

Finally, 18 U.S.C. § 3553(a)(6) states that the sentencing court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been *found guilty* of similar conduct." (Emphasis added). Defendant's co-defendant Cordell Davis,[12]

---

[11] Agents also testified regarding co-defendant Guerra's actions after Fields' arrest, which the government argues corroborates defendants' involvement in the events of September 5, 2009, but this evidence is insufficient to support a conviction without Fields' testimony.

[12] Davis' sentence took into account that he endangered law enforcement officers in attempting to escape arrest.

15

who had a guideline criminal history category of II, pled guilty to Counts One, Seven, Eight, Nine, Ten, and Eleven of the superseding indictment and was sentenced to 180 months imprisonment.[13] Co-defendant Terrence Mullen, who had a criminal history category of VI, pled guilty to Count One of the superseding indictment and was sentenced to 150 months imprisonment. Co-defendant Fields pled guilty to Count One of the superseding indictment and co-defendant Guerra pled guilty to Count Ten of the superseding indictment. Both await sentencing. Harrington, defendant's alleged supplier, pled guilty in a separate case to conspiracy to distribute heroin, cocaine, crack cocaine, and marijuana and was sentenced to 264 months imprisonment. The guideline sentence of 324-405 months that the government seeks for defendant is substantially greater than the sentences imposed on his co-defendants and alleged co-conspirators, and those individuals pled guilty to crimes substantially similar to the two counts on which defendant was convicted. Although all these individuals did have the benefit of the offense level adjustment for acceptance of responsibility, the disparity goes beyond a three-level adjustment. To sentence defendant more severely than his co-defendants would contravene the 3553(a)(6) mandate.

---

[13]Although defendant's co-defendants (including Fields) pled guilty to the conspiracy for which the jury acquitted defendant, their pleas are not evidence in the case against defendant. United States v. Radomski, 473 F.3d 728, 730 (7th Cir. 2007). Although the court may rely on the hearsay evidence contained in plea agreements at sentencing, those plea agreements must contain sufficient indicia of reliability and the defendant must have the opportunity to rebut that evidence. United States v. Mendoza, 576 F.3d 711, 717-18 (7th Cir. 2009). At trial, defendant took the stand and took the position that his relationship with Harrington was buyer-seller, and that he intermittently sold to the other alleged members of the conspiracy.

For these reasons, the court elects to exercise its sentencing discretion by declining to consider the acquitted conduct as relevant conduct. The court will determine the appropriate drug quantity based on the counts of conviction and the additional quantities defendant admitted to distributing in his trial testimony, which was more than 100 grams of heroin but less than one kilogram. The final offense level is 32, and defendant's criminal history category is II. The resulting advisory guideline range is 135-168 months.

**ENTER:** August 26, 2013

_____
**Robert W. Gettleman**
**United States District Judge**